**ORIENT INS. CO. v. FLOTA MERCANTE DEL ESTADO.**

**THE RIO PRIMERO.**

No. 859.

United States District Court
E. D. Louisiana, New Orleans Division.

Sept. 7, 1951.

■■■■■■■■■■■■■

Deutsch, Kerrigan & Stiles, New Orleans, La., for libellant.

Chaffe, McCall, Toler & Phillips, New Orleans, La., for respondent.

CHRISTENBERRY, Chief Judge.

This is a libel against Flota Mercante del Estado, a department of the government of Argentina, which operates the merchant fleet of the Republic of Argentina. The libel is brought by Orient Insurance Company, a subrogee of the rights of Sidney-Ross Company, Inc., shipper of certain barrels of acetyl salicylic acid. The damage is alleged to have been sustained as a result of the breakage and wetting of some of the barrels.

Jurisdiction was obtained by service on the manager of the local office of Flota Mercante del Estado. As originally brought, the libel was also in rem against the SS Rio Primero. However, no attachment of the vessel was effected.

On the basis of the pleadings and the evidence, I make the following:

Findings of Fact.

1. At all material times, libellant Orient Insurance Company was an insurance corporation with the principal office in the United States located in the city and state of New York.

2. At all material times, respondent Flota Mercante del Estado was a department of the government of the Republic of Argentina, operating the merchant fleet of the Republic of Argentina, engaged in the carriage of cargo as a common carrier on the high seas, and the owner of the SS Rio Primero, a general ship engaged in the common carriage of merchandise by water.

3. At all material times, Flota Mercante del Estado maintained an office and place of business in the City of New Orleans.

4. On or about February 24, 1943, the Sidney Ross Company, Inc., 120 Astor Street, Newark, N. J., delivered to respondent, Flota Mercante del Estado, at the port of New Orleans, consigned for delivery at the port of Buenos Aires, Argentina, to be carried aboard the SS Rio Primero, consigned by the said Sidney Ross Company, Inc., to the order of Cia Argentina Sidney Ross, Inc., S.A., 198 barrels of acetyl salicylic acid, commonly known and hereafter referred to as aspirin, and certain other goods which are not material to the issues here.

5. Respondent accepted the aspirin and other goods as being in apparent good order and condition, and in consideration of certain freight charges paid or agreed to be paid, agreed to carry the aspirin from the port of New Orleans, Louisiana, to the port of Buenos Aires, Argentina, and issued therefor its clean bill of lading bearing the number 115.

6. At New Orleans, before the aspirin was delivered to the SS Rio Primero, it was found necessary to recooper 29 of the barrels containing the aspirin, and with reference to these 29 barrels the shipper, Sidney Ross Company, Inc. executed a letter of guaranty in which in consideration of the respondent's issuing its clean bill of lading, the Sidney Ross Company, Inc. agreed to hold the respondent harmless, and fully indemnified against all loss or damage with respect to such barrels.

7. The aspirin was packed in heavy paper bags, which were contained in wooden barrels, which barrels were made of $\frac{1}{2}''$ and $1''$ oak staves. These barrels were of good quality, and better than those customarily used in the trade.

8. The SS Rio Primero arrived at the port of Buenos Aires, on April 4, 1943, and the cargo was unloaded and delivered into the local customs warehouse between April 6 and April 16, 1943.

9. Because of the bad condition of certain of the barrels containing aspirin, the consignee, on April 7, 1943, requested F. B. O'Grady & Company, correspondents of the Board of Underwriters of New York, to survey the consignment. F. B. O'Grady & Company surveyed the merchandise first at the customs warehouse between April 8 and April 16, 1943. This survey disclosed that 15 barrels were broken, with loss of

contents, and 12 of these barrels were wet, with damage to their contents.

10. Notice of loss and damage was given the carrier at Buenos Aires, by letter dated April 20, 1943. The carrier acknowledged receipt of this notice, and denied liability for the loss and damage by letter dated April 30, 1943.

11. The cargo was received at the warehouse of the consignee in Buenos Aires on May 3, 1943. This warehouse is a completely enclosed, modern one. At the warehouse a detailed survey was made, which disclosed a slackage in the broken barrels, of 177.06 kgs., and with respect to the wetted barrels the survey disclosed that most of the aspirin could be recovered by reprocessing. The wetted aspirin was reprocessed, with the result that 1626.25 kgs. of the total contents of 1945.04 kgs. of aspirin were recovered, leaving a net loss of 318.79 kgs.

The cost of re-processing was Argentine $4878.75.

12. Only 2 of the barrels covered by the letter of guaranty, namely numbers 215 and 216, were among the 15 barrels which arrived at Buenos Aires in broken condition. Barrel No. 215 showed a slackage of 4.7 kgs., and barrel No. 216 had a slackage of 0.7 kgs.

13. The CIF value of the aspirin was U. S. $1.119 per kg., and the rate of exchange was Argentine $3.955 to U. S. $1.00.

The CIF value of the 177.06 kgs. of aspirin, being the total amount lost due to breakage of the barrels, is U. S. $198.13.

The CIF value of 318.79 kgs. of aspirin lost because of wetting was U. S. $356.73.

The cost of re-processing the wetted aspirin in the amount of Argentine $4,878.75 equals U. S. $1,233.57.

The aspirin lost due to breakage of the barrels after deducting the 5.4 kgs. lost as the result of the breaking of barrels Nos. 215 and 216, which are covered by the letter of guaranty, amounts to 171.66 kgs., having a value of $192.09.

The survey fee of Argentine $185 was charged by F. B. O'Grady & Company, which fee is equal to U. S. $49.30.

### Conclusions of Law.

■ 1. This court has jurisdiction over the subject-matter, and the parties herein.

■ 2. The recital in a bill of lading that a shipment is in apparent good order and condition is not contractual, and does not amount to a warranty as between the immediate parties, and the carrier is free to prove the contrary. Cheek Neal Coffee Co. v. Osaka Shosen Kaisha, D.C.E.D.La. 1929, 36 F.2d 256; Clark v. Barnwell, 12 How. 272, 279, 13 L.Ed. 985; The Vallescura, 1934, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373.

3. Respondent has failed to establish that the shipment was not in actual good order and condition when received by it.

■ 4. The goods having been received by respondent in apparent good order and condition, and having been delivered in a damaged condition, the burden is on the respondent to show that the damage or loss was occasioned by one of the perils from which it is exempted by the bill of lading. Cheek Neal Coffee Co. v. Osaka Shosen Kaisha, supra; Clark v. Barnwell, supra; The Vallescura, supra.

■ 5. Respondent has failed to establish that the damage and loss were occasioned by one of the perils from which it is exempted by the bill of lading.

■ 6. Libellant is not entitled to recover for the 5.4 kgs. of aspirin lost through the breaking of barrels Nos. 215 and 216, amounting to $6.04.

7. Libellant is entitled to judgment in the total sum of $1,831.69, together with interest from date of demand, and costs.

Let appropriate decree be drawn and presented.